Clifford Eugene DAVIS, Jr., a Minor, By His Father and Next Friend, Clifford Eugene Davis, Sr., etc., et al.

v.

EAST BATON ROUGE PARISH SCHOOL BOARD, A Corporation, and Lloyd Funchess, As Superintendent of Public Schools In East Baton Rouge Parish.

Civ. A. No. 1662.

United States District Court
E. D. Louisiana,
Baton Rouge Division.

July 17, 1963.

Order on Plan for Desegregation
July 18, 1963.

A. P. Tureaud, A. M. Trudeau, Jr., New Orleans, La., Johnnie A. Jones, Baton Rouge, La., Jack Greenberg, Norman Amaker, Constance Motley and James M. Nabrit, III, New York City, for plaintiffs.

Jack P. F. Gremillion, Atty. Gen. of Louisiana, Baton Rouge, La., Sargent Pitcher, Jr., Dist. Atty., and John F. Ward, Jr., Asst. Dist. Atty., Parish of East Baton Rouge, Baton Rouge, La., for defendants.

WEST, District Judge.

On March 5, 1963, D.C., 214 F.Supp. 624, an order was issued by this Court requiring the East Baton Rouge Parish School Board to present, by July 5, 1963, a detailed plan for executing an orderly transition of the public schools of the Parish of East Baton Rouge, Louisiana, from a racially discriminatory school system to a racially non-discriminatory school system. This order was merely requiring compliance with a prior judgment and order issued by this Court, as then constituted, on May 25, 1960. In response to this order, the East Baton Rouge Parish School Board, after obviously devoting much time, study, and conscientious effort to this difficult assignment, presented a proposed plan to the Court on June 28, 1963.

It was to be expected, of course, that any such plan prepared and presented on a unilateral basis, without prior agreement or consultation between all parties concerned, would meet with objections from the plaintiffs. As was expected, on July 10, 1963, plaintiffs filed numerous and varied objections to every phase of the proposed plan filed by the School Board.

As a result of these objections, it now becomes the duty of this Court, working in concert with the attorneys for all parties concerned, to reconcile, and compromise, to the best of its ability, these conflicting positions. The mandate of the United States Supreme Court, pursuant to which this Court and the defendant School Board must necessarily operate, is well known to all, and requires no detailed reiteration. It simply requires that the transition to a racially non-discriminatory school system be made "as soon as practicable" and "with all deliberate speed". However, the Supreme Court in Brown v. Board of Education, 349 U.S. 294, 75 S.Ct. 753, 99 L. Ed. 1083, recognized that because of his proximity to local conditions, the District Judge can best perform the judicial appraisal necessary to properly balance, adjust and reconcile the conflicting public and private needs involved. Thus, the Supreme Court set down the following guidelines in Brown to be used by the District Judge in attempting to assess and evaluate these needs:

"While giving weight to these public and private considerations, the courts will require that the defendants make a prompt and reasonable start toward full compliance with our May 17, 1954, ruling. Once such a start has been made, the courts may find that additional time is necessary to carry out the ruling in an effective manner. The burden rests upon the defendants to establish that such time is necessary in the public interest and is consistent with good faith compliance at the earliest practicable date. To that end, the courts may consider problems related to administration, arising from the physical condition of the school plant, the school transportation system, personnel, revision of school districts and attendance areas into compact units to achieve a system of determining admission to the public schools on a nonracial basis, and revision of local laws and regulations which may be necessary in solving the foregoing problems. They will also consider the adequacy of any plans the defendants may propose to meet these problems and to effectuate a transition to a racially nondiscriminatory school system. During this period of transition, the courts will retain jurisdiction of these cases." Brown v. Board of Education, supra.

With these general principles in mind, this Court has approached the problem of attempting to assess, reconcile and adjust the conflicting positions of the parties to this suit.

The proposed plan as submitted by the School Board provides in pertinent part as follows:

"NOW THEREFORE: To insure the continued orderly and efficient operation of the school system and to comply with the order of the Honorable United States District Court and to instruct the school staff as to how they shall handle the problems of desegregation and to insure orderly procedure of uniform application for pupil assignment, transfer and/or placement and to enable the continuing improvement of the educational advantages offered, the following rules and procedures shall be followed:

"1. In the assignment, transfer or continuance of pupils among and within the schools, or within the classroom and other facilities thereof, the following factors and the effects or results thereof shall be considered, with respect to the indi-

vidual pupil, as well as other relevant matters:

"(a) Available room and teaching capacity in the various schools;

"(b) The availability of transportation facilities;

"(c) The effect of the admission of new pupils upon established or proposed academic programs;

"(d) The suitability of established curricula for particular pupils;

"(e) The adequacy of the pupil's academic preparation for admission to a particular school and curriculum;

"(f) The scholastic aptitude and/or ability of the pupil;

"(g) The psychological qualification of the pupil for the type of teaching and associations involved;

"(h) The effect of admission of the pupil upon the academic progress of other students in a particular school or facility thereof;

"(i) The effect of admission upon prevailing academic standards at a particular school;

"(j) The psychological effect upon the pupil of attendance at a particular school;

"(k) The home environment of the pupil;

"(l) The maintenance or severance of established social and psychological relationships with other pupils and with teachers;

"(m) The choice and interests of the pupil;

"(n) The ability to accept or conform to new and different educational environment;

"(o) The morals, conduct, health and personal standards of the pupil;

"(p) The request or consent of parents or guardians and the reasons assigned therefor.

"2. Subject to supervision and review by the Board, the Superintendent of Schools shall have authority and be charged with responsibility with respect to the assignment (including original and all other admissions to the school system), transfer and continuance of pupils among and within all public schools operated under the jurisdiction of the East Baton Rouge Parish School Board and make assignments and reassignments which he feels may be in the best interests of the school system based on the criteria in the preceding paragraph.

"3. The Superintendent shall have authority to determine the particular public school to be attended by each child, and no child shall be entitled to be enrolled or entered in a public school until he has been assigned thereto by the Superintendent or his duly authorized representative. All existing school assignments shall continue without change until or unless transfers are directed or approved by the Superintendent or his duly authorized representative.

"4. Applications for the transfer of pupils to or in particular schools shall be personally delivered to the Superintendent of Schools within 15 days after notification of assignment on forms provided by the Superintendent and made available at the offices of the School Board. Such forms shall be delivered

only on request of and to the applicant student or to his parent or legal guardian in person by the Superintendent of Schools or his designee.

"5. A separate application must be filed by each pupil desiring transfer to a particular school and no joint application will be considered.

"6. Applications for transfer of pupils must be filled in completely and legibly in ink or typewriter and must be signed by both parents or the parent to whom the child has been awarded by court proceedings or the legal guardian of each child for whom application is made. The Superintendent may in his discretion require interviews with the child, the parents or guardian, or other persons and may conduct or cause to be conducted such examinations, tests and other investigations as he deems appropriate. In the absence of excuse, satisfactory to the Superintendent or the Board, failure to appear for any requested examination, test or interview by the child or the parents or guardian will be deemed a withdrawal of the application.

"7. Notice of the action taken by the Superintendent on each application for transfer shall be mailed to the parents or guardian at the address shown on the application, within thirty days from the delivery of the application to the Superintendent. Such action shall be final unless appealed to the Board in the manner set forth hereafter.

"8. Such appeal shall be taken by mailing same to the Board within ten days of the date notice of the Superintendent's decision is mailed to the parent. The parent or guardian appealing the Superintendent's decision may submit the matter to the Board without a hearing or may request a hearing before the Board. The Board may also, if it deems it advisable, call a hearing on the appeal. Such hearing may be public or private at the option of the parent. If no hearing is requested and the Board does not deem a hearing necessary, the Board shall act upon the same within a three-week period stating its conclusion. If a hearing is requested or if the Board deems a hearing necessary with respect to the appeal, the parents or guardian will be given at least ten days' written notice of the time and place of the hearing. The hearing will be begun within twenty days from the receipt by the Board of the request or the decision by the Board that a hearing is necessary. Failure of the parents or guardian to appear at the hearing will be deemed a withdrawal of the application.

"9. The Board may appoint a committee composed of one or more of its members or one or more competent examiners to conduct any such hearing, take testimony, and report the evidence, with its recommendation, to the entire Board for its determination within ten days after the conclusion of such hearing. In addition to hearing such evidence relevant to the individual pupil as may be presented on behalf of the petitioner, the Board shall be authorized to conduct investigations as to any objection or request, including examination of the pupil or pupils involved, and may employ such agents and others, professional and otherwise, as it may deem necessary for the purpose of any investigations and examinations. The Board will

notify the parent or guardian of its decision within ten days after the conclusion of any hearing before the Board.

"10. Any student who was not enrolled in the public school system of East Baton Rouge Parish prior to the end of the school session when assignment was made must report to the Office of the Superintendent in order to be duly and properly assigned to a school in the system. No enrollment or registration of any pupil is permissible without the written approval and assignment from the Office of the Superintendent.

"11. Beginning with the school session of 1964–65, student assignment in the East Baton Rouge Parish public school system shall be made in accordance with aforesaid rules and regulations and without regard to race or color. For the first school year in which it is effective, the plan shall apply to the students in the 12th grade. Thereafter, in each successive year, the plan shall be expanded to the immediate lower grade; e. g., in the 1965–66 year—grade 11; in the 1966–67 year—grade 10, etc., until all grades are included.

"12. Nothing contained in this resolution shall be construed to prevent the separation of boys and girls in any school or grade, or to prevent the assignment of boys and girls to separate schools.

"13. If any paragraph of these rules and procedure shall be held by any court of competent jurisdiction to be invalid for any reason, the remaining paragraphs shall continue of full force and effect. If any portion, clause or sentence of any paragraph shall be held by any court of competent jurisdiction to be invalid for any reason, the remainder of any such paragraph shall continue of full force and effect."

To this plan, the plaintiffs, in essence, have filed the following objections:

1. The proposed plan is unreasonable in providing that the plan of desegregation shall not commence until the school year 1964–65.

2. The number of criteria for assignment and transfer of pupils contained in the proposed plan is excessive and these criteria are too vague, ambiguous, and meaningless, and are susceptible of being applied to continue rather than eliminate racial segregation in the public schools.

3. The Superintendent of Public Schools is given excessive and unwarranted discretion in the assignment and reassignment of pupils.

4. The proposed plan provides for the initial assignment of pupils on a racial basis, thus placing the undue burden of requesting transfer on Negro pupils who wish to attend a desegregated school.

5. The appeal procedure contained in Paragraphs 8 and 9 of the proposed plan is unnecessarily burdensome and protracted and places an undue burden on Negro children desiring to exercise their constitutional right to attend desegregated schools.

6. The contemplation that desegregation shall commence in the twelfth grade rather than at the first grade level is unreasonable.

7. The plan makes no provision for the elimination of presently existing dual school zones.

8. The period of delay requested by the School Board for completing desegregation of the school system is not "necessary in the public interest" and is not "consistent with good faith compliance" with Brown v. Board of Education, supra.

9. The plan provides for no assignment or reassignment of teachers and staff on a non-racial basis.

10. The proposed plan is unreasonable generally in that it makes no provision

for the named plaintiffs to secure their personal and present right to desegregated education.

Several additional, but completely irrelevant objections were filed by plaintiffs, apparently as a result of counsel's lack of familiarity with the East Baton Rouge Parish school system. These objections, pertaining to matters not under the jurisdiction or control of the East Baton Rouge Parish School Board, such as matters concerning vocational education, operation of kindergartens and pre-school programs, adult education programs, etc., being completely irrelevant to the present suit, require no discussion here.

As clearly set forth in the above quotations from Brown, this Court has no alternative but to require the defendants to make a "prompt and reasonable start" toward full compliance with the total mandate. Once such a start has been made, however, the Court may find that additional time is necessary, or possibly less time may be required, to carry out to completion the ruling in an effective manner. See Brown v. Board of Education, supra.

Consequently, of primary importance at this time is the initial step to be taken in the direction of ultimate desegregation of the public school system.

The objection raised by plaintiffs to the 1964–65 school year as the proposed commencement date of the plan is, of course, not without merit. There has been no justifiable reason advanced by the School Board, nor does it appear that they could have advanced such a reason, why at least an *initial* step in that direction could not be taken at the commencement of the 1963–64 school year. However, due to the limited time available between now and the beginning of school on September 3, 1963, the requirements of the first or initial step in the direction of desegregation must, of necessity, be somewhat limited. Student assignments for the 1963–64 school year have already been made. Teacher assignments have been made. Budgets have been prepared and approved, and transportation requirements have been provided for. Many other administrative details have been crystallized and put into operation, all based upon student assignments already made. It would not only be unreasonable, but it would be virtually impossible to require any kind of wholesale reassignment of students, even in one grade, at this late date, insofar as the 1963–64 school year is concerned. But it would be equally unconscionable to delay the entire plan for another full year. As stated in the brief filed by counsel for the School Board, " * * * Every child * * * should have the right to attend the school of his choice, subject to reasonable restrictions and limitations thereon, in the interest of building a better educational system." Consequently, in recognition of this principle, and after much deliberation, and after long and fruitful conferences with counsel for all parties involved the implementation of the following detailed plan for the school year 1963–64, together with the adoption of the general plan outlined for the following years, will be determined by this Court to constitute a "prompt and reasonable start" toward compliance with the Supreme Court's mandate of May 17, 1954.

1. Even though the initial student assignments for the school year 1963–64 have, in fact, been made on the basis of race, these initial assignments will, for this school year, be considered adequate, subject, however, to the following transfer provisions:

"(a) The East Baton Rouge Parish School Board shall, not later than Friday, July 19, 1963, mail notices to all students, regardless of race or color, presently assigned for the school year 1963–64 to the twelfth grade of any school under its jurisdiction, advising them that they may, from July 29, 1963 through August 7, 1963, apply for transfer and reassignment to the twelfth grade of another school of their choice.

"(b) Unless otherwise specifically provided herein, such transfer shall

be made in accordance with the procedures pertaining to transfers currently in general use by the East Baton Rouge Parish School Board. Application forms for transfer shall be made available by the School Board to all students affected and complete, detailed instructions as to procedures to be followed in applying for transfer shall be furnished with the applications.

"(c) Transfers, when requested, shall be liberally granted, and in no instance unreasonably denied. No denial of a request for transfer shall be based upon race or color. However, in determining whether or not a request for transfer shall be granted, the School Board, in considering the application for transfer, may consider the following factors as proper criteria to be applied in granting or denying the request for transfer:

"(1) The desires or wishes of the pupil and his parent or guardian.

"(2) The availability of space and other facilities in the school to which transfer is requested.

"(3) The scholastic record, ability and aptitude of the pupil as determined from his prior school record, and his compatibility, or reasonably expected compatibility, in this regard with the school to which transfer is requested.

"(4) The age of the pupil as compared to the ages of the pupils already attending the school to which transfer is requested.

"(5) The availability of requested or desired courses of study in the school to which transfer is requested.

"(6) In the event a transfer is requested to a particular school, but it develops that there is available space in another school, in all respects comparable to the one to which transfer is requested, closer to the applicant's residence, the School Board may, if it deems it advisable, make the transfer to the comparable school closest to the pupil's residence, rather than to the school to which transfer was requested.

"(7) No pupil need be granted more than one transfer in any one school year.

"(8) No request for transfer may be denied solely on the grounds of technical errors or omissions made by the applicant or his parent or guardian in the preparation of the application for transfer.

"(d) All pupils requesting transfer in accordance herewith shall be notified in writing by the School Board of the action taken on their request for transfer not later than August 21, 1963. If such notification is to the effect that the requested transfer has been denied, specific reasons for such denial shall be clearly set forth in the notification of rejection.

"(e) If a requested transfer is denied and the applicant or his parent or guardian wishes to make objection to the denial, such objection shall be filed in writing with the Superintendent of Schools or his designated representative, not later than August 27, 1963. In such event, the party thus taking exception to the Board's ruling may, if he wishes, request a conference with the Superintendent of Schools, or his designated representative, in order to more fully discuss the reasons for rejection. If such a conference is requested, it shall be granted, and all such conferences shall be made available from August 27, 1963 through August 30, 1963. In the absence of objection and/or request

for conference being filed, as herein provided, it will be conclusively presumed that the applicant has no objection to the action taken by the Board.

"(f) When an applicant's request for transfer has been rejected, and appeal proceedings hereinabove outlined have been exhausted, and further relief is sought by the applicant, such further relief must then be sought through appropriate judicial proceedings.

This restatement of the proposed desegregation plan for the school year 1963–64 does not differ materially from that proposed by the School Board. It simply provides for a re-opening of the time within which requests for transfer may be made, and it simplifies both the criteria to be used by the Board when passing upon applications for transfer and the procedures to be followed in contesting denials of transfer requests.

As provided in the proposed plan submitted by the School Board, it, the School Board, may still require that applications for transfer be delivered to the Superintendent or his authorized representative in person, either by the pupil or by his parent or guardian; it may still require that a separate application for transfer be filed for each pupil requesting transfer; it may still require that applications for transfer be completed legibly, in ink or by typewriter, provided, as stated above, no rejection shall be based solely on technical errors or omissions contained in the application; it may still require that any pupil who was not enrolled in the public school system of East Baton Rouge Parish prior to the end of the school session when assignment was made must report to the office of the Superintendent in order to be duly and properly assigned to a school in the system, and that no enrollment or registration of any pupil is permissible without the written approval and assignment from the office of the Superintendent; it may still provide for the separation of boys and girls in any school or grade, and it may still assign boys and girls to separate schools, as long as such assignments are not made on the basis of race or color.

Plaintiffs object to the plan of desegregation commencing at the twelfth grade level rather than at the first grade level. No valid reason was, or could be, advanced by the plaintiffs in support of this objection. In the process of desegregating schools throughout the country, many different plans have been successfully employed. Some areas have preferred to commence desegregation at the first grade level, while others, with equal or perhaps even greater success, have commenced at the twelfth grade level. Among the cities employing the latter plan are: Little Rock, Arkansas; Pulaski, Kentucky; Harlan, Kentucky; Taylor, Kentucky; Atlanta, Georgia; Anderson County, Tennessee; Norfolk, Virginia; Hot Springs, Arkansas; Cumberland, Kentucky; Spencer, Kentucky; Donville, Kentucky; Dorchester, Maryland; Wilson County, Tennessee, and Warren County, Virginia.

■ As was stated in Aaron v. Cooper, D.C., 143 F.Supp. 855, 8 Cir., 243 F.2d 361, primary responsibility for implementation of the constitutional principle announced in the Supreme Court decision declaring segregation of public schools to be unconstitutional is upon the school authorities and it is the duty of the school authorities to solve the many and varied legal problems involved in establishing racially non-segregated schools. The East Baton Rouge Parish School Board and its staff have labored long and hard in an honest, good faith effort to carry the burden of implementing the constitutional principles announced by the United States Supreme Court, and to solve the many and varied local problems involved. In their wisdom, they have concluded that the best approach is to initially implement the Supreme Court mandate by commencing their plan of desegregation at the twelfth grade level. With this decision the Court certainly should not quarrel. The only objection to this plan comes from the plaintiffs, through their counsel, who

have apparently had no experience whatsoever in operating or administering a public school system, and who apparently are quite unfamiliar with the East Baton Rouge Parish school system, as well as the local problems involved, as was made quite evident by some of the interrogatories propounded by them in this case. When formulating a plan of desegregation, the greatest weight should be given, wherever possible, to the opinions and recommendations of the local school board, and when these opinions and recommendations do no violence to the constitutional principles involved, they should be accepted and followed by the Court. In this case, there is no valid reason whatsoever for this Court to ignore the recommendation of the School Board that desegregation of East Baton Rouge Parish school system commence at the twelfth grade level.

■ Insofar as the progression of the plan of desegregation during future years is concerned, we are not faced with the same or similar time limitations applicable to the coming school year. By law, this Court must retain jurisdiction over this case, and must, from time to time, hold such additional hearings and issue such additional orders as may be required in order to finally bring to completion the transition of the present school system from a racially segregated system to a racially non-discriminatory system. It must be borne in mind that there is no law, nor is there any decision of any Court, which *requires* integration of public schools. The only requirement is that *forced segregation* of the public school system be abolished. There is certainly no prohibition against purely voluntary segregation.

> "Negro children have no constitutional right to the attendance of white children with them in the public schools. Their constitutional right to 'equal protection of the laws' is the right to stand equal before the laws of the State; that is, to be treated simply as individuals without regard to race or color." Boson v. Rippy, 5 Cir., 285 F.2d 43.

"It must be remembered that the decisions of the Supreme Court of the United States in Brown v. Board of Education, 1954, 347 U.S. 483, 74 S. Ct. 686, 98 L.Ed. 873 and 1955, 349 U.S. 294, 75 S.Ct. 753, 99 L.Ed. 1083, do not compel the mixing of the different races in the public schools. No general reshuffling of the pupils in any school system has been commanded. The order of that Court is simply that no child shall be denied admission to a school on the basis of race or color. * * * Consequently, compliance with that ruling may well not necessitate such extensive changes in the school system as some anticipate." Thompson v. County School Board of Arlington County, D.C., 144 F.Supp. 239; 4 Cir., 252 F.2d 929; cert. den. 356 U.S. 958, 78 S.Ct. 994, 2 L.Ed.2d 1065.

■ It has been held by the Fifth Circuit Court of Appeal that it is discriminatory and violative of the Fourteenth Amendment for the School Board to make initial assignments of pupils to racially segregated schools, and then to require a pupil to apply for transfer in order to attend a desegregated school. In Bush v. Orleans Parish School Board, 5 Cir., 308 F.2d 491, the Court said: "To assign children to a segregated school system and then require them to pass muster under a pupil placement law is discrimination in its rawest form." Thus, the Courts, in some instances, have required initial assignments of students to be made on a purely geographic basis, i. e., all students arbitrarily assigned to the school nearest their home. But if it is "discrimination in its rawest form" to assign pupils to segregated schools solely on the basis of race in an attempt to maintain segregation, then surely it is the rawest kind of disregard for the rights of all students, both white and Negro, to arbitrarily assign them to schools on a purely geographic basis, thus, in effect, *compelling* integration in the schools contrary to law, and probably in most instances, contrary to the wishes of the pupils themselves.

As I understand the law, and as I would certainly hope it to be, if it is illegal and discriminatory to force segregation in the public schools, then it must certainly be equally illegal and discriminatory to force integration in the public schools. Consequently, conflicting rights and needs must again be carefully weighed and reconciled as nearly as possible by attempting to balance the one against the other; by eliminating, as far as possible, forced or compulsory segregation, while at the same time permitting, but not forcing, integration. There is, in my opinion, no completely satisfactory way to accomplish this end, other than to establish white schools, Negro schools, and mixed schools. But the Appellate Courts have previously ruled, for some obscure reason, that such a plan does not satisfy the requirements of the Fourteenth Amendment. Boson v. Rippy, et al., 5 Cir., 285 F.2d 43. Consequently, we must look for another solution. After exhaustive exploration by this Court and by counsel for all parties involved in this litigation into the various possibilities available, it has been concluded that the ends of justice can best be served, and the mandate of the Supreme Court best complied with, if, commencing with the 1964–65 school year, all initial assignments of pupils to the twelfth and eleventh grades are made purely and simply on a basis of individual choice, reserving to all pupils, of course, the right to apply for transfer in accordance with the procedures herein established for the 1963–64 school year. This plan will then progress downward, one grade a year, until the transition is complete. Thus, in the grades affected, every pupil, regardless of race or color, will, as far as practicable, be admitted on a first come, first served basis, to the school of his choice. This method of initial assignment will, of course, be subject to all reasonable procedural requirements that may be adopted and promulgated by the East Baton Rouge Parish School Board.

This plan, again, is not vastly different from that proposed by the School Board itself. It does eliminate what has been branded by the Fifth Circuit Court of Appeals as an objectionable feature, namely, the initial assignment being made on the basis of race alone. Under the plan proposed by the School Board, the initial assignment was to be made on the basis of race alone. Under that plan it would then be incumbent upon a person wishing to transfer to a desegregated school to pursue the transfer procedures available. It must be assumed that after those procedures were followed, the resulting assignments would be based largely on the pupil's choice. The plan as approved by the Court simply eliminates the objectionable initial step of assignment made solely on the basis of race and provides that the initial assignment itself shall be made on the basis of the pupil's choice. It eliminates forced segregation in the initial assignment, and it likewise eliminates, as far as possible, the forced integration that would result from initial assignments based entirely on geographic considerations.

The adoption and implementation of the plan outlined herein will, in the opinion of this Court, constitute a "prompt and reasonable start" toward full compliance with the ruling in the Brown case. Since it is impossible at this time to determine with any degree of certainty the exact amount of time that will be needed to implement complete desegregation of the entire school system in a systematic and effective manner, it may well be that additional conferences or hearings will, from time to time, be needed. Additional, supplemental, or amendatory orders of this Court may be required. This Court will, therefore, retain jurisdiction of this case until the transition is completed.

An order will be entered in accordance with this opinion.

### ORDER ON PLAN FOR DESEGREGATION

The respondent, East Baton Rouge Parish School Board, has presented to the Court a proposed plan for desegregation of the East Baton Rouge Parish

school system, and the plaintiffs have presented their objections thereto. The Court, after considering the proposed plan and the objections thereto, and the evidence and arguments of counsel in connection therewith, and for the written reasons filed herein on July 17, 1963, is of the opinion that the plan submitted should be approved and adopted, subject to the qualifications and modifications herein set out.

It is, therefore, ordered that the plan submitted by the respondent, East Baton Rouge Parish School Board, which is adopted as a part hereof by reference, be, and the same is hereby approved, with the following qualifications and modifications:

1. All initial pupil assignments made prior to the date of this order for the school year 1963–64, even though made on the basis of race, will be considered adequate, subject, however, to the following transfer provisions:

(a) The East Baton Rouge Parish School Board shall, not later than Friday, July 19, 1963, mail notices to all students, regardless of race or color, presently assigned for the school year 1963–64 to the twelfth grade of any school under its jurisdiction, advising them that they may, from July 29, 1963 through August 7, 1963, apply for transfer and reassignment to the twelfth grade of another school of their choice.

(b) Unless otherwise specifically provided herein, such transfer shall be made in accordance with the procedures pertaining to transfers currently in general use by the East Baton Rouge Parish School Board. Application forms for transfer shall be made available by the School Board to all students affected and complete, detailed instructions as to procedures to be followed in applying for transfer shall be furnished with the applications.

(c) Transfers, when requested, shall be liberally granted, and in no instance unreasonably denied. No denial of a request for transfer shall be based upon race or color. However, in determining whether or not a request for transfer shall be granted, the School Board, in considering the application for transfer, may consider the following factors as proper criteria to be applied in granting or denying the request for transfer:

(1) The desires or wishes of the pupil and his parent or guardian.

(2) The availability of space and other facilities in the school to which transfer is requested.

(3) The scholastic record, ability and aptitude of the pupil as determined from his prior school record, and his compatibility, or reasonably expected compatibility, in this regard with the school to which transfer is requested.

(4) The age of the pupil as compared to the ages of the pupils already attending the school to which transfer is requested.

(5) The availability of requested or desired courses of study in the school to which transfer is requested.

(6) In the event a transfer is requested to a particular school, but it develops that there is available space in another school, in all respects comparable to the one to which transfer is requested, closer to the applicant's residence, the School Board may, if it deems it advisable, make the transfer to the comparable school closest to the pupil's residence, rather than to the school to which transfer was requested.

(7) No pupil need be granted more than one transfer in any one school year.

(8) No request for transfer may be denied solely on the grounds of technical errors or omissions made by the applicant or his parent or guardian in the preparation of the application for transfer.

(d) All pupils requesting transfer in accordance herewith shall be notified in writing by the School Board of the action taken on their request for transfer not later than August 21, 1963. If such notification is to the effect that the requested transfer has been denied, specific reasons for such denial shall be clearly set forth in the notification of rejection.

(e) If a requested transfer is denied and the applicant or his parent or guardian wishes to make objection to the denial, such objection shall be filed in writing with the Superintendent of Schools or his designated representative, not later than August 27, 1963. In such event, the party thus taking exception to the Board's ruling may, if he wishes, request a conference with the Superintendent of Schools, or his designated representative, in order to more fully discuss the reasons for rejection. If such a conference is requested, it shall be granted, and all such conferences shall be made available from August 27, 1963 through August 30, 1963. In the absence of objection and/or request for conference being filed, as herein provided, it will be conclusively presumed that the applicant has no objection to the action taken by the Board.

(f) When an applicant's request for transfer has been rejected, and appeal proceedings hereinabove outlined have been exhausted, and further relief is sought by the applicant, such further relief must then be sought through appropriate judicial proceedings.

2. Commencing with the school year 1964–65, all initial assignments of pupils to the twelfth and eleventh grades shall be made purely and simply on the basis of individual choice, reserving to all pupils, however, the right to apply for transfer in accordance with the procedures herein established for the 1963–64 school year. This plan will then progress downward, one grade a year, until the transition is complete. Thus, in the grades affected, every pupil, regardless of race or color, will, as far as practicable, be admitted on a first come, first served basis to the school of his choice. This method of initial assignment will, of course, be subject to all reasonable procedural requirements that may be adopted and promulgated by the East Baton Rouge Parish School Board.

3. The remainder of the plan submitted by the East Baton Rouge Parish School Board, and filed in the record hereof, is approved insofar as it does not conflict with the express provisions of this order. The transition of the school system to a non-discriminatory system shall proceed with all deliberate speed in accordance with this order.

4. Jurisdiction over this case is retained during the entire period of transition.