Ura Bernard LEMON et al., Plaintiffs,

United States of America, Plaintiff-Intervenor, Appellant,

v.

BOSSIER PARISH SCHOOL BOARD et al., Defendants-Appellees.

No. 77–1882.

United States Court of Appeals, Fifth Circuit.

Jan. 11, 1978.

Rehearing Denied Feb. 9, 1978.

Donald E. Walter, U. S. Atty., D. H. Perkins, Jr., First Asst. U. S. Atty., Shreveport, La., Lloyd J. Parker, Jr., Frank D. Allen, Jr., John C. Hammock, Attys., Dept. of Justice, Washington, D. C., for plaintiff-intervenor-appellant.

Henry N. Brown, Jr., Dist. Atty., 26th Judicial Dist., Benton, La., for defendants-appellees.

Frank E. Brown, Jr., Jesse N. Stone, Jr., Shreveport, La., for other interested parties.

Drew S. Days, III, New York City, for Lemon et al.

S. P. Davis, Shreveport, La., for Bossier Citizenship et al.

Before GOLDBERG, CLARK and RONEY, Circuit Judges.

GOLDBERG, Circuit Judge:

The sole issue presented in this case is whether the Bossier Parish School Board may continue to operate Butler Elementary School as an all-black school when there are three virtually all-white elementary schools within two miles of Butler. The district court denied a motion for supplemental relief filed by the United States asking that the school board be ordered to desegregate Butler, and the United States appeals. We reverse.

## I.

The original suit in this litigation was filed by black plaintiffs against the Bossier Parish School Board on December 2, 1964. The plaintiffs sought relief from the dual public school system then in operation in Bossier Parish, Louisiana. The United States intervened as plaintiff. After protracted litigation, the district court on January 20, 1970 approved a desegregation plan submitted by the defendants which was designed to abolish the Parish's *de jure* segregated school system. Butler Elementary School, the only school at issue in this suit, was originally constructed under this dual school system to serve an all-black student body. Under the 1970 desegregation plan Butler was placed in a school zone serving an all-black neighborhood, and the record most favorably construed indicates that there is one non-black child presently attending the school.

The plan adopted by the district court in 1970 did contemplate future desegregation of the Butler school. Pursuant to the court's directions, a city-wide kindergarten program was established at Butler in the express hope that the white students who enrolled in the program would remain at Butler. Between 1970 and 1973 substantial numbers of white students in fact enrolled in the program, and many of these students were bused to the Butler school. Despite the kindergarten program, however, grades one through six remained overwhelmingly black. In the 1973-74 school year the school board initiated kindergarten programs at several of the predominantly white elementary schools and by the 1974–75 school year the kindergarten program at Butler served only black students.[1]

On August 1, 1975 the United States filed a motion for supplemental relief to desegregate Butler, the remaining single-race school in Bossier City. The district court empaneled a bi-racial committee to study the situation, and the committee concluded that Butler should be continued in operation as a neighborhood school despite its all-black student population. After an evidentiary hearing, the district court accepted the committee's recommendation and refused to order the defendants to desegregate the Butler school, concluding that the all-black student enrollment was "primarily a result of demography," and that "[p]airing and the consequent busing which would be required would not . . . effectively desegregate the school." This appeal followed.

## II.

The Butler school was built as part of a *de jure* segregated, dual school system and was designed to serve black students exclusively. It has never been desegregated. "Where the school authority's proposed plan for conversion from a dual to a unitary system contemplates the continued existence of some schools that are all or predominantly of one race, they have the burden of showing that such school assignments are genuinely nondiscriminatory . . . [and] that [the schools'] racial composition is not the result of present or past discriminatory action on their part." *Swann v. Charlotte-Mecklenburg Board of Education,* 402 U.S. 1, 26, 91 S.Ct. 1267, 1281, 28 L.Ed.2d 554 (1971). As we explained in *Boykins v. Fairfield Board of Education,* 457 F.2d 1091, 1095 (5th Cir. 1972), "In the conversion from dual school systems based on race to unitary school systems, the continued existence of all-black or virtually all-black schools is unacceptable where reasonable alternatives exist." 457 F.2d at 1095, *quoting Allen v. Board of Public Instruction,* 432 F.2d 362, 367 (5th Cir. 1970), *cert. denied,* 402 U.S. 952, 91 S.Ct. 1609, 29 L.Ed.2d 123 (1971).

There can be no doubt that the present racial composition of Butler is a vestige of the school board's past unconstitutional practices. Thus the only issue before us is

---

1. The record does not indicate that one white student was enrolled at Butler in either kindergarten or first grade in the 1975–76 school year.

whether there are reasonable alternatives to the continued existence of Butler as an all-black school. After examining the record, we have concluded that at least three such alternatives exist. *See Cisneros v. Corpus Christi Independent School District,* 467 F.2d 142, 152–3 (5th Cir. 1972) (en banc), *cert. denied,* 413 U.S. 922, 93 S.Ct. 3052, 37 L.Ed.2d 1044 (1973). First, Butler Elementary could be paired with nearby Bossier Elementary. Second, the school zones for Butler, Bossier, Central Park, and Plantation Park Elementary schools could be redrawn so as to integrate effectively the Butler school. Neither of these alternatives was considered seriously by the school board. Finally, the Butler school could be closed and its students transferred to one or more of the three neighboring schools. We shall briefly examine each of these alternatives in turn.

■ The district court concluded that pairing Butler with nearby Bossier Elementary would not achieve desegregation of the Butler school. This conclusion is clearly erroneous. Our examination of the record indicates that pairing would effectively desegregate Butler Elementary "without creating impractical attendance zones or inordinate transportation problems." *Bradley v. Board of Public Instruction of Pinellas County,* 431 F.2d 1377, 1381 (5th Cir. 1970), *cert. denied,* 402 U.S. 943, 91 S.Ct. 1608, 29 L.Ed.2d 111 (1971). Although pairing might not be the remedy of first resort, "where all-black or virtually all-black schools remain under a zoning plan, but it is practicable to desegregate some or all of the black schools by using the tool of pairing, that tool must be used," *Flax v. Potts,* 464 F.2d 865, 868 (5th Cir.), *cert. denied,* 409 U.S. 1007, 93 S.Ct. 433, 34 L.Ed.2d 299

(1972), *quoting Allen v. Board of Public Instruction,* 432 F.2d 362, 367 (5th Cir. 1970).

■ Bossier Elementary is only one mile west of Butler and the record indicates that access to and from Butler by bus presents no insurmountable travel problems. We reject defendant's contention that the industrialization of the area immediately surrounding the school would present a safety hazard to students transported to Butler. The black students presently attending Butler both ride buses and walk to the school. These students reach Butler safely every day, and we are confident that the hazards of travel through an industrial area do not increase merely by mixing the complexions of the travelers. If the area surrounding the Butler school were dangerous, the school board would not allow its black students to attend the school.[2]

We also note that Bossier Parish is not inexperienced with the logistics of busing. Indeed, prior to 1970 all black children in Bossier City attended Butler Elementary, and many of them were bused from outside the Butler area. At present, three-fourths of all students in the system are bused to school. The six or seven buses now serving Bossier Elementary and one bus serving Butler could just as easily be used to transport students the extra mile necessary to pair the schools. Transportation was not a problem when black students were bused to Butler prior to 1970, and nothing in the record convinces us that it would be any more of a problem today.

■ A second possible alternative to maintaining Butler as an all-black school is to redraw the school zone lines for Butler, Bossier, Central Park, and Plantation Park

---

**2.** Defendants rely on *Stout v. Jefferson County Board of Education,* 537 F.2d 800 (5th Cir. 1976), to support their contention that the prevailing land use in the area precludes pairing. In *Stout* we "reluctantly" refused to order busing to desegregate a school system's two remaining black schools where it would have been necessary to bus students more than 10

miles along a steep and winding mountainous route. The court concluded that busing was inappropriate given the distances involved and the potential danger to the students. Here, on the other hand, Bossier Elementary School is only one mile from Butler along a flat and apparently safe route.

Elementary schools. Central Park and Plantation Park are both only two miles from Butler by bus, and Bossier is only one mile away. An estimated one third of Bossier Elementary's students, one half of Plantation Park's students, and three-fifths of Central Park's students are presently bused to school. Busing these students an extra mile or two to Butler appears to be a feasible and reasonable alternative to maintaining Butler as an all-black school.[3]

The third alternative available to the district court is to close the Butler school and bus its students to one or all of the neighboring elementary schools. The record makes clear that Bossier and Central Park together have the excess capacity to absorb Butler's student population.[4] Furthermore, the distances and topography between Butler and those schools are such that the school board should have little difficulty in handling any transportation and logistical problems that might arise.[5]

desegregation, the courts must strive to keep abrasions and dislocations to a minimum.

Pairing Butler with Bossier Elementary or redrawing the Butler school zone lines would appear to involve less busing of students not now bused than would closing the Butler school since a much greater percentage of students at Bossier, Central Park, and Plantation Park are presently bused to school than at Butler.[6] Desegregation could thus be effectuated in part by merely rerouting students who are presently bused to school anyway. The district court should consider and give weight to this factor on remand.

The order of the district court is reversed and the case remanded with directions that the racially segregated character of Butler Elementary School be eliminated by the beginning of the 1978–79 school year.

REVERSED and REMANDED.

## III.

■ By whatever means the district court deems appropriate in the exercise of its equity powers, Butler must be disestablished as a one-race school. Although we do not require the use of any particular method discussed above nor approve in advance the use of a particular device, we do note that in choosing among plans each of which satisfy the constitutional requirements for

---

3. We note here that one alternative considered by the school board was to redraw one of the boundaries of the Butler school zone. This proposal would have added approximately eighteen white students to the Butler student population. As the district judge correctly remarked at the hearing below, this change would not effectively integrate Butler's student population. While the "constitutional command to desegregate schools does not mean that every school in every community must always reflect the racial composition of the school system as a whole," *Swann, supra,* 402 U.S. at 24, 91 S.Ct. at 1280, halfhearted attempts by the school board will not discharge its constitutional duty to desegregate its schools.

4. Bossier's capacity is 800 students and its September 1976 enrollment was 391. Thus Bossier alone could handle Butler's 158 students. Central Park's capacity is 675 and its September 1976 enrollment was 536 students. The record does not indicate whether there is excess capacity at Plantation Park.

5. Although Butler has a capacity of 500 students, only 158 children presently attend the school.

6. In *Boykins v. Fairfield Board of Education,* 457 F.2d 1091 (5th Cir. 1972), we suggested to the district court for purposes of remand that a particular desegregation method appeared to be the most feasible way to accomplish the goal of eradicating the vestiges of past segregation.