Clifford Eugene DAVIS, Jr., et al., Plaintiffs,

Dr. D'Orsay Bryant and Alphonso O. Potter,
Plaintiffs-Intervenors-Appellants,

v.

EAST BATON ROUGE PARISH SCHOOL BOARD et al.,
Defendants-Appellees.

No. 75–3610.

United States Court of Appeals,
Fifth Circuit.

April 7, 1978.

Rehearing Denied May 25, 1978.

Robert C. Williams, Murphy W. Bell, Baton Rouge, La., for plaintiffs-intervenors-appellants.

John F. Ward, Jr., Baton Rouge, La., for defendants-appellees.

Before COLEMAN, TJOFLAT, and FAY, Circuit Judges.

TJOFLAT, Circuit Judge:

In the proceedings below, the district court found that the East Baton Rouge Parish school system is a unitary system being operated on a nondiscriminatory basis and dismissed this case with prejudice. The intervenors appeal from the district court's order; they claim that the school system is not and never has been unitary.[1]

Like so many school desegregation suits in this circuit, this case has been in the federal courts for many years. The suit was instituted in 1956, following the Supreme Court's decisions in *Brown v. Board of Education (Brown I)*, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873 (1954) and *Brown v. Board of Education (Brown II)*, 349 U.S. 294, 75 S.Ct. 753, 99 L.Ed. 1083 (1955). In the course of this protracted litigation, the district court has entered various injunctive orders, keeping pace with the evolving law in this area as espoused by the Supreme Court and this circuit.[2]

The East Baton Rouge Parish school system was last before this court in a consolidated case decided in 1967. *United States v. Jefferson County Board of Education*, 380 F.2d 385 (5th Cir. 1967) (en banc), *modifying*, 372 F.2d 836 (1966). This court remanded the case to the district court in 1967, with instructions that the district court enforce the affirmative duty of the boards and officials administering public schools . . . to bring about an integrated, unitary school system in which there are no Negro schools and no white schools—just schools. . . . The necessity of overcoming the effects of the dual school system in this circuit requires integration of faculties, facilities, and activities, as well as students.

1. Dr. D'Orsay Bryant and Mr. Alphonso O. Potter were allowed to intervene as plaintiffs by the district court on December 19, 1969. Dr. Bryant, President of the Baton Rouge Chapter of the NAACP, and Mr. Potter, Regional Vice-President of the NAACP for the Sixth District, were both black citizens of the Parish and fathers of school-age children. In their motion to intervene, they alleged that the interests of local black children were not being properly and expeditiously represented. In 1974, the intervenors sought further integration of the East Baton Rouge Parish schools by filing a motion for supplemental relief. The district court's opinion denying this motion and dismissing the entire suit is reported at 398 F.Supp. 1013 (M.D.La.1975).

2. In addition to the order of dismissal now on appeal, see note 1 *supra*, there have been three other reported decisions by the district court. These decisions can be found at 269 F.Supp. 60 (M.D.La.1967), 219 F.Supp. 876 (M.D.La.1963), and 214 F.Supp. 624 (M.D.La.1963).

*Id.* at 389 (footnotes omitted). Following this court's remand, East Baton Rouge Parish operated a combined geographic zone and freedom-of-choice school assignment plan. *Davis v. East Baton Rouge Parish School Board*, 269 F.Supp. 60 (M.D.La.1967). Two years later, this court held in *Hall v. St. Helena Parish School Board*, 417 F.2d 801 (5th Cir.), *cert. denied*, 396 U.S. 904, 90 S.Ct. 218, 24 L.Ed.2d 180 (1969), that a freedom of choice plan was unacceptable when it did not effectively desegregate the school system. Following the *Hall* decision, in 1970 the East Baton Rouge Parish School Board established a biracial committee, the Public Education Study Committee, which created two biracial subcommittees to consider separately the problems of student and faculty desegregation. The biracial committee formulated a proposed school desegregation plan that was unanimously approved by the school board and submitted to the district court, which adopted it on July 22, 1970. Second supp. record at 30. No appeal was taken.

The 1970 plan provided for desegregation of faculty, staff, transportation, extracurricular activities, student body composition, and school facilities. Student assignment was based primarily on the neighborhood school concept, under which children would attend the school closest to their place of residence. A majority-to-minority transfer provision was also incorporated into the plan, allowing a child attending a school in which the majority of students were of his race to transfer to a school in which he would be in the minority.

In 1974, the intervenors filed a motion for further relief. Drawn in general terms, the motion alleged that the 1970 plan was not desegregating the school system effectively. This contention was based primarily on two grounds. First, in East Baton Rouge Parish there still exist many one-race or substantially one-race schools. Second, the present teacher reassignment plan, although desegregating the faculty, places less experienced teachers in the "black" schools, thereby allegedly lowering the quality of education.

On August 14, 1974, the district judge designated the Louisiana Educational Laboratory (LEL) as a court-appointed expert to assist the court in the case and directed LEL to file an interim report by January 1, 1975, indicating any immediate remedies that the court should impose. Based upon the recommendations made by LEL, the district court entered an interim order on February 26, 1975.[3] After the LEL filed its final report, the district court set a final hearing on the intervenors' motion for supplemental relief and challenge to the LEL study. This hearing was held on June 18, 1975. Four witnesses testified: the LEL officer who supervised the study, the school board superintendent, and two witnesses not directly involved in either the LEL study or the administration of the school system. At the conclusion of the hearing, the district judge requested briefing from the parties.

On August 21, 1975, the district court handed down the order that is the basis of this appeal. 398 F.Supp. 1013 (M.D.La. 1975). The district judge stated that the interim relief ordered in February had been fully complied with, that the biracial committee was in the process of studying further desegregation techniques (*e. g.*, alteration of attendance zones, reassignment of teachers, and clustering of schools), and that the school board had already done everything that the Constitution mandates in eliminating a dual school system. He declared the system to be unitary and held

---

3. The district judge found that the school board had made "a good faith effort to comply with the prior orders of this Court, and to bring this school system into compliance with the Court's orders and with constitutional requirements." Record, vol. 1, at 110. Despite this finding, the judge ordered immediate school board action on several of the LEL recommendations: (1) the appointment of a second black to a high administrative position; (2) the provision of public transportation to complement the majority-to-minority transfer option; (3) the reorganization of the biracial committee, rendering it a court-appointed advisory body; and (4) the consideration of further planning in the areas of the magnet school concept, the restructuring of attendance zones, and the racial composition of the school board's central staff.

that under *Brown II*'s mandate that the federal courts retain jurisdiction over a school system pending its transition from a dual to a unitary system, the East Baton Rouge Parish school system was no longer appropriately within his jurisdiction. Accordingly, he dismissed the suit with prejudice.

## I. Student Assignment

The main thrust of the intervenors' attack on East Baton Rouge Parish's school desegregation is the large number of substantially one-race schools. The record discloses that the East Baton Rouge Parish school system serves both the city of Baton Rouge and the parish of East Baton Rouge. The parish contains 468.35 square miles, is irregularly shaped, and is approximately thirty miles from north to south and twenty miles from east to west. Along with the city of Baton rouge, there are suburban and rural areas in the parish. There are approximately 70,000 students enrolled in the school system, of which some 36,000 are transported daily by provision of the school board. The racial mix is approximately sixty-five percent white, thirty-five percent black.

Of the approximately 110 schools in the system, twenty have student bodies comprised solely of black children. In addition, over half of the schools have student bodies that are ninety percent or more of one race, and over half of the black students attend schools that are essentially all black.

In its order dismissing the case, the court below commended the neighborhood school plan now utilized by the school board without determining whether further eradication of the vestiges of past discrimination, which are evidenced by the one-race schools, could be accomplished by means of the "desegregation tools" approved in *Swann v. Charlotte-Mecklenburg Board of Education*, 402 U.S. 1, 91 S.Ct. 1267, 28 L.Ed.2d 554 (1971). *See also, Green v. County School Board*, 391 U.S. 430, 88 S.Ct. 1689, 20 L.Ed.2d 716 (1968); *United States v. Mississippi*, 567 F.2d 1276 (5th Cir. 1978).

There is a presumption under *Swann* against the maintenance of a school system with substantially one-race schools. The Supreme Court declared as follows:

> Where the school authority's proposed plan for conversion from a dual to a unitary system contemplates the continued existence of some schools that are all or predominately of one race, they have the burden of showing that such school assignments are genuinely nondiscriminatory. The court should scrutinize such schools, and the burden upon the school authorities will be to satisfy the court that their racial composition is not the result of present or past discriminatory action on their part.

402 U.S. at 26, 91 S.Ct. at 1281. In the absence of explicit and specific findings by the district court, we are unable to determine whether the school board has met its burden and whether these schools have been subjected to the close scrutiny that is required prior to declaring that a school system passes constitutional muster. We therefore vacate the district court's order dismissing the case and remand the case for further proceedings. *See, e. g., United States v. South Park Independent School District*, 566 F.2d 1221 (5th Cir. 1978).

At a minimum, the district court on remand must evaluate whether any of the essentially one-race schools would be eliminated by the remedial altering of attendance zones or the pairing and clustering of noncontiguous school zones. *See Swann*, 402 U.S. at 27–29 & n. 10, 91 S.Ct. at 1281–82; *Lemon v. Bossier Parish School Board*, 566 F.2d 985 (5th Cir. 1978); *Cisneros v. Corpus Christi Independent School District*, 467 F.2d 142, 152–54 (5th Cir. 1972) (en banc), *cert. denied*, 413 U.S. 922, 93 S.Ct. 3052, 37 L.Ed.2d 1044 (1973). These are only examples of the permissible tools that may be used to integrate a school system. The district court is directed to consider the possible alternatives to the neighborhood school concept and to make findings regarding the feasibility and efficacy of implementing one or a combination of these alternatives. As this court has repeatedly stated, "The findings and con-

clusions we review must be expressed with sufficient particularity to allow us to determine rather than speculate that the law has been correctly applied." *Golf City, Inc. v. Wilson Sporting Goods, Co.*, 555 F.2d 426, 433 (5th Cir. 1977) (quoting *Hydrospace-Challenger, Inc. v. Tracor/MAS, Inc.*, 520 F.2d 1030, 1034 (5th Cir. 1975)).

## II.

### TEACHER ASSIGNMENT

■ The second point raised by the intervenors concerns the present teacher reassignment plan, implemented pursuant to *Singleton v. Jackson Municipal Separate School District*, 419 F.2d 1211 (5th Cir.), *rev'd in part on other grounds sub nom. Carter v. West Feliciana Parish School Board*, 396 U.S. 290, 90 S.Ct. 608, 24 L.Ed.2d 477 (1970). The plan was designed to remedy the disproportionate racial balance of teachers in the schools. Although facially neutral, the plan has led to the placement of inexperienced teachers in the "black" schools and more experienced, and therefore allegedly more qualified, teachers in the "white" schools. This occurred because transfers were made in reverse order of seniority; the teacher in a particular school with the most seniority, whether white or black, is the last teacher to be transferred to another school. Two of the factors contributing to this imbalance in experience are the larger number of white teachers and the longer duration of black teachers in the school system. These factors create a larger pool of relatively inexperienced white teachers so that when they are "traded" for black teachers, the school system places a disproportionate number of relatively inexperienced teachers into the "black" schools.

We reserve any decision on the teacher reassignment scheme utilized by the East Baton Rouge Parish school board. As stated previously, the biracial committee has been studying the present plan. The district court on remand is directed to consider the plan in light of the dual purposes involved: desegregation must be effected, and quality education must be promoted.

Specific findings must be made by the district court on this aspect of the desegregation of the school system so that we can properly review the issue. *See Golf City, Inc. v. Wilson Sporting Goods, Co.*

## III.

### CONCLUSION

■ As part of its inquiry on remand, the district court is directed to consider and to make findings on the other issues raised by the intervenors' motion for supplemental relief. These issues concern alleged discrimination in new school construction and site selection, funding of schools, and use of the biracial committee.

The judgment dismissing the case is vacated. The case is remanded for further proceedings and specific findings in accordance with this opinion.

**VACATED AND REMANDED WITH INSTRUCTIONS.**